

# Lloyd's Certificate

This Insurance is effected with certain Underwriters at Lloyd's, London.

This Certificate is issued in accordance with the limited authorization granted to the Correspondent by certain Underwriters at Lloyd's, London whose syndicate numbers and the proportions underwritten by them can be ascertained from the office of the said Correspondent (such Underwriters being hereinafter called "Underwriters") and in consideration of the premium specified herein, Underwriters hereby bind themselves severally and not jointly, each for his own part and not one for another, their Executors and Administrators.

The Assured is requested to read this Certificate, and if it is not correct, return it immediately to the Correspondent for appropriate alteration.

All inquiries regarding this Certificate should be addressed to the following Correspondent:

Miller Insurance Services LLP
70 Mark Lane,
London EC3R 7NQ.

SLC-3 (USA) **NMA2868 (24/08/00) amended.**

**This Declaration Page is attached to and forms part of**
**Certificate provisions (SLC-3 USA amended)**

| | |
|---|---|
| **Previous No:** | Not Applicable |
| **Authority Ref. No:** | B0621PFDO08517 |
| **Certificate No:** | B0621PALIN000217 |
| **Insurance is effective with:** | **Certain UNDERWRITERS AT LLOYD'S, LONDON 100%** |
| | **Scheduled as follows:** |

| | |
|---|---|
| CGM 2488 | 65.0000% |
| BRT 2987 | 6.3640% |
| VSM 5678 | 6.3640% |
| PEM 4000 | 6.3640% |
| ARK 4020 | 6.3640% |
| CSL 1084 | 3.1810% |
| AFB 2623 | 5.2180% |
| AFB 0623 | 1.1450% |

| | | | |
|---|---|---|---|
| **Signed** | | **Signed** | |
| **Dated** | 18 October 2017 | **Dated** | 18 October 2017 |
| **By** | Andrew Bettis<br>For the Correspondent | **By** | Martin Pipe<br>For the Correspondent |

**CERTIFICATE PROVISIONS**

1.  **Signature Required.** This Certificate shall not be valid unless signed by the Correspondent.

2.  **Correspondent Not Insurer.** The Correspondent is not an Insurer hereunder and neither is nor shall be liable for any loss or claim whatsoever. The Insurers hereunder are those Underwriters at Lloyd's, London whose syndicate numbers can be ascertained as hereinbefore set forth. As used in this Certificate "Underwriters" shall be deemed to include incorporated as well as unincorporated persons or entities that are Underwriters at Lloyd's, London.

3.  **Assignment.** This Certificate shall not be assigned either in whole or in part without the written consent of the Correspondent endorsed hereon.

4.    **Attached Conditions Incorporated.** This Certificate is made and accepted subject to all the provisions, conditions and warranties set forth herein, attached or endorsed, all of which are to be considered as incorporated herein.

5.    **Complaints.** All complaints must be referred in the first instance to the Coverholder and, if no satisfaction is obtained, complaints can be referred to the Complaints Department, Lloyd's whose address is:

Complaints Department, Lloyd's, One Lime Street, London EC3M 7HA, UK.
Tel. +44 (0)20 7327 1000
www.lloyds.com

Lloyd's is Authorised under the Financial Services and Markets Act 2000 and regulated by the Financial Conduct Authority and the Prudential Regulation Authority, whose addresses are as follows:

Financial Conduct Authority, 25 The North Colonnade, Canary Wharf, London E14 5HS
Tel. +44 20 7066 1000
www.fca.org.uk

Prudential Regulation, 20 Moorgate, London, EC2R 6DA
Tel. +44 020 3461 7000
www.pra.org.uk

**MILLER PROF POLLUTION TECH 2013**

**ARCHITECTS AND ENGINEERS PROFESSIONAL LIABILITY,
ARCHITECTS, ENGINEERS AND CONTRACTORS POLLUTION LIABILITY,
TECHNOLOGY BASED SERVICES, TECHNOLOGY PRODUCTS,
COMPUTER NETWORK SECURITY AND
MULTIMEDIA AND ADVERTISING LIABILITY & PRIVACY LIABILITY INSURANCE DECLARATIONS
THIS IS A CLAIMS-MADE AND REPORTED LIABILITY INSURANCE CERTIFICATE.
PLEASE READ CAREFULLY.**

**CERTIFICATE NUMBER:  B0621PALIN000217**

**1.      Named Assured:**

Alin Machining Co, Inc
dba Power Plant Services and Power Plant Manufacturing, LLC
Power Plant Repair Services, LLC
Power Plant Field Services, LLC
Field Management Machining/FSM
PPS Properties, LLC
C&F Corp
NB Finishing

**Address:**
3131 W Soffel Ave
Melrose Park
Cook
Illinois 60166
United States of America

**2.      Certificate Period:**

From:     14th September 2017
To:         14th September 2018
Both dates at 12:01 a.m.Local Standard Time at the above address

**3.      Limit of Liability:**

(a)       USD 1,000,000 Each Claim including Claims Expenses.
(b)       USD 1,000,000 Aggregate for the Certificate Period including Claims Expenses.

**4.      Deductible:**

USD 50,000 Each Claim Deductible - includes Claims Expenses.

State TAX: $1,181.00

**5.      Premium:**

USD 33,750.00

Stamping Fee: $68.00

Broker Fee: $300.00

Fee Other: $150.00

**6.      Retroactive Date:**

Coverage shall apply only to those matters reported pursuant to the terms and conditions of the Certificate arising out of Professional Services and performed subsequent to:

15th September 2014, but;

15th September 2015 for Power Plant Services, LLC and Power Plant Field Services, LLC.,

15th September 2017 for Field Systems Machining/FSM, PPS Properties, LLC, C&F Corp and NB Finishing,

15th September 2017 for Insuring Agreement H

**7.** **Technology Based Services, Technology Products, Computer Network Security, And Multimedia And Advertising Liability & Privacy Liability Insurance Coverage Option:**

| | | |
|---|---|---|
| Purchased | ✓ | If this box is checked then Insuring Agreements C., D., E., F. and G. of this Certificate shall apply. |
| Not Purchased | | If this box is checked then Insuring Agreements C., D., E., F and G. of this Certificate shall not apply. |

**8.** **Optional Extension Period:**

Premium for **Optional Extension Period:**

12 months at 100% of the total premium for this Certificate
24 Months at 175% of the total premium for this Certificate
36 Months at 225% of the total premium for this Certificate

**9.** **Notice of Claim To:**

DWF Claims
740 Waukegan Road, Suite 204
Deerfield, IL 60015
USA
FNOLUS@dwfclaims.com

**10.** **Notice of Election:**

CRC Insurance Services, Inc
550 W. Van Buren
Chicago
Illinois 60607
United States of America

**11.** **Service of Suit:**

Mendes & Mount LLP
750 Seventh Avenue
New York
NY 10019-6829

**12.** **Choice of Law**

New York

**Endorsements attached hereto:**

| | |
|---|---|
| I. | NMA 1256 Nuclear Incident Exclusion (amended) |
| II. | NMA 1477 Radioactive Contamination Exclusion (amended) |
| III. | Application Endorsement |
| IV. | Several Liability Notice |
| V. | Sanction and Limitation Exclusion Clause |
| VI. | Design Build Endorsement (carveback C&D) |
| VII. | General, Products and Completed Operations Liability Warranty and Exclusion Endorsement |
| VIII. | Mediation Endorsement |
| IX. | No Claims Declaration Endorsement |

X.          Risk Management Services to be provided by DWF Claims
XI.         Manufacturing Endorsement
XII.        Amended Products Endorsement (Manufacturing)
XIII.       Professional Services Endorsement
XIV.        Additional Assured Endorsement

**MILLER PROF POLLUTION TECH 2013**

**ARCHITECTS AND ENGINEERS PROFESSIONAL LIABILITY,
ARCHITECTS, ENGINEERS AND CONTRACTORS POLLUTION LIABILITY,
TECHNOLOGY BASED SERVICES,
TECHNOLOGY PRODUCTS,
COMPUTER NETWORK SECURITY AND
MULTIMEDIA AND ADVERTISING LIABILITY INSURANCE**

-

NOTICE:  This Coverage is provided on a Claims Made and Reported Basis.  Except as otherwise provided, this coverage applies only to Claims first made against the Assured during the Certificate Period and reported in writing to the Underwriters pursuant to the terms of this Insurance Certificate.  The Limit of Liability available to pay Damages shall be reduced and may be completely exhausted by payment of Claims Expenses.  Please review the coverage afforded under this Insurance Certificate carefully and discuss the coverage hereunder with your insurance agent or broker.

In consideration of the payment of the premium and reliance upon the statements in the Application which is deemed a part of this Insurance Certificate (hereinafter referred to as the "Certificate" or "Insurance") and subject to the Limit of Liability, deductible, exclusions, conditions and other terms of this Insurance, the Underwriters agree with the Named Assured, set forth at Item 1. of the Declarations made a part hereof:

**I.      INSURING AGREEMENTS**

To pay on behalf of the Assured Damages and Claims Expenses, in excess of the each Claim deductible, which the Assured shall become legally obligated to pay because of any Claim first made against the Assured during the Certificate Period or Optional Extension Period (if applicable) and reported in writing to the underwriters either during the Certificate Period, within sixty (60) days after the expiration of the Certificate Period, or during the Optional Extension Period (if applicable) arising out of one or more of the following acts or events committed or taking place on or after the retroactive date set forth in item 6. of the declarations and before the end of the Certificate Period:

A.      Architects and Engineers Professional Liability

any negligent act, error or omission in rendering or failure to render Professional Services by the Assured or by any person, including an independent contractor, for whose negligent act, error or omission the Named Assured is legally responsible; or

B.      Architects, Engineers and Contractors Pollution Liability

a Pollution Condition arising out of the rendering of or failure to render Professional Services or the performance of or failure to perform Contracting Services by the Assured or by any person, including an independent contractor, for whose Pollution Condition the Named Assured is legally responsible.

The Insuring Agreements C., D., E., F. and G. below only apply if Item 7. of the Declarations indicates that these Insuring Agreements have been purchased.

C.      Technology Based Services

any negligent act, error or omission, or any unintentional breach of contract, in rendering or failure to render Technology Based Services by the Assured or by any person, including an independent contractor, for whose negligent act, error or omission or unintentional breach of contract the Named Assured is legally responsible;

D.      Technology Products

any negligent act, error or omission, or any unintentional breach of contract, by the Assured that results in the failure of Technology Products to perform the function or serve the purpose intended;

E.   Computer Network Security

any act, error or omission in the course of providing or managing Computer Systems security by the Assured or by any person, including an independent contractor, for whose act, error or omission the Named Assured is legally responsible that results in:

1.   the inability of a third party, who is authorized to do so, to gain access to Computer Systems or your Technology Based Services;

2.   the failure to prevent Unauthorized Access to Computer Systems that results in:

a.   the destruction, deletion or corruption of electronic data on Computer Systems;

b.   Theft of Data from Computer Systems; or

c.   denial of service attacks against Internet sites or computers; or

3.   the failure to prevent transmission of Malicious Code from Computer Systems to third party computers and systems.

F.   Multimedia and Advertising

liability imposed by law or Assumed Under Contract arising out of:

1.   defamation, libel, slander, product disparagement, trade libel, prima facie tort, infliction of emotional distress, outrage, outrageous conduct, or other tort related to disparagement or harm to the reputation or character of any person or organization;

2.   invasion of or interference with the right to privacy or of publicity;

3.   misappropriation of any name or likeness for commercial advantage;

4.   false arrest, detention or imprisonment or malicious prosecution;

5.   invasion of or interference with any right to private occupancy, including trespass, wrongful entry, eviction or eavesdropping;

6.   plagiarism, piracy or misappropriation of ideas under implied contract;

7.   infringement of copyright;

8.   infringement of trade dress, domain name, title or slogan, or the dilution or infringement of trademark or service mark;

9.   negligence regarding the content of any Media Communication, including harm caused through any reliance or failure to rely upon such content; or

10.   misappropriation of trade secret.

in the course of the Named Assured's performance of Professional Services, Media Activities or Technology Based Services;

G.   Privacy Liability Coverage

1.   theft or misuse of Personally Identifiable Non-Public Information or Third Party Corporate Information that is in the care, custody or control of the Named Assured,

or an independent contractor that is holding or processing such information on behalf of the Named Assured;

2. the Named Assured's failure to timely disclose a Security Breach in violation of any Breach Notice Law;

3. failure by the Assured to comply with that part of a Privacy Policy that specifically:

   a. prevents or prohibits improper or intrusive collection of Personally Identifiable Non-Public Information from a person;

   b. requires notice to a person of the Named Assured's collection or use of, or the nature of the collection or use of his or her Personally Identifiable Non-Public Information;

   c. provides a person with the ability to assent to or withhold assent for (e.g. opt-in or opt-out) the Named Assured's collection or use his or her Personally Identifiable Non-Public Information;

   d. prohibits or restricts the Named Assured's disclosure, sharing or selling of a person's Personally Identifiable Non-Public Information;

   e. requires the Named Assured to provide access to Personally Identifiable Non-Public Information or to correct incomplete or inaccurate Personally Identifiable Non-Public Information after a request is made by a person; or

   f. mandates procedures and requirements to prevent the loss of Personally Identifiable Non-Public Information;

   provided the Named Assured must, at the time of such acts, errors or omissions have in force a Privacy Policy that addresses those subsections above that are relevant to such Claim.

Insuring Agreements A., B., C., D., E. F. and G. of this Insurance shall not apply to any Claim for or arising out of the disclosure, misuse or misappropriation of any ideas, trade secrets or confidential information that came into the possession of any person prior to the date he or she became an employee, officer, director, principal or partner of the Named Assured.

## II.   SUPPLEMENTARY PAYMENTS

All payments made under this Clause are not subject to the Deductible and are payable by the Underwriters in addition to the Limits of Liability.

A.   Defendants Reimbursement

Upon the Underwriter's request, the Assured shall attend mediation meetings, arbitration proceedings, hearings, depositions and trials relative to the defense of a Claim.  After the first three (3) days attendance required for each Claim, the Underwriters shall reimburse the Assured, upon written request, for actual loss of earnings and reasonable expenses due to such attendance up to USD500 for each day in the aggregate for all Assureds subject to a maximum amount of USD10,000 for each Claim.

B.   ADA, FHA, OSHA Regulatory / Administrative Actions Reimbursement

Underwriters will reimburse the Assured, upon written request, for legal fees and expenses up to USD30,000 in the aggregate for the Certificate Period, incurred by the Assured with the prior written consent of the Underwriters, in responding to a regulatory or administrative action brought directly against the Assured during the Certificate Period by a government agency under the Americans with Disabilities Act of 1990 (ADA), the Fair Housing Act (FHA) or the Occupational Safety and Health Act (OSHA) provided that the regulatory or administrative action:

1. arises out of the rendering of or failure to render Professional Services; and

2. is reported to the Underwriters during the Certificate Period.

After the Underwriters have paid USD30,000 under this Clause, the Underwriters shall not be obligated to pay any further legal fees and expenses.

C. Disciplinary Proceedings Reimbursement

Underwriters will reimburse the Assured, upon written request, for legal fees and expenses up to USD10,000 in the aggregate for the Certificate Period, incurred by the Assured with the prior written consent of the Underwriters, in responding to a disciplinary proceeding brought directly against the Assured during the Certificate Period provided that the disciplinary proceeding:

1. arises out of the rendering of or failure to render Professional Services; and

2. is reported to the Underwriters during the Certificate Period.

After the Underwriters have paid USD10,000 under this Clause, the Underwriters shall not be obligated to pay any further legal fees and expenses.

D. Reputation Management Reimbursement

The Underwriters will reimburse the Named Assured fifty per cent (50%) of the first USD30,000 in Reputational Management Expenses incurred by the Named Assured for reputational management consulting services which are incurred in connection with a Claim covered under this Certificate that the Named Assured reasonably believes will have a material adverse effect upon the Named Assured's reputation.

Reputational Management Expenses means reasonable fees, costs, and expenses incurred by the Named Assured for reputational management consulting services provided by a public relations firm to the Named Assured in response to a Claim.

After the Underwriters have paid USD15,000 under this Clause II. D., the Underwriters shall not be obligated to pay any further Reputational Management Expenses.

## III. DEFENSE, SETTLEMENT, AND INVESTIGATION OF CLAIMS

A. The Underwriters shall have the right and duty to defend, subject to the Limit of Liability, exclusions and other terms and conditions of this Certificate, any Claim against the Assured seeking Damages which are payable under the terms of this Certificate, even if any of the allegations of the Claim are groundless, false or fraudulent.

B. The Underwriters shall have the right and duty to defend, subject to the Limit of Liability, exclusions, and other terms and conditions of this Certificate, any Claim in the form of a civil suit against the Assured that seeks injunctive relief (meaning a temporary restraining order or a preliminary or permanent injunction) for one or more of the acts listed in Insuring Agreement F. if:

1. the Claim is first made during the Certificate Period or Optional Extension Period (if applicable) and reported to the Underwriters pursuant to the terms of this Certificate; and

2. the act or acts were committed on or after the Retroactive Date and before the end of the Certificate Period in the course of the Named Assured's performance of Professional Services, Media Activities or Technology Based Services.

C. When the Underwriters defend a Claim, they will pay Claims Expenses incurred with their prior written consent. The Limit of Liability available to pay Damages shall be

reduced and may be completely exhausted by payment of Claims Expenses. Damages and Claims Expenses shall be applied against the Each Claim Deductible.

D.   The Underwriters shall have the right to make any investigation they deem necessary, including, without limitation, any investigation with respect to the Application and statements made in the Application and with respect to coverage.

However, notwithstanding the above, the Assured's rights under this Certificate shall not be prejudiced by any refusal to disclose the identity of any confidential source of information, or to produce any documentation or information obtained in the course of Media Activities in respect of which the Assured has asserted a claim of reporter's privilege or any other privilege regarding the protection of news-gathering activities.

E.   If the Named Assured shall refuse to consent to any settlement or compromise recommended by the Underwriters and acceptable to the claimant(s) and the Named Assured elects to contest the Claim, the Underwriters' liability for any Damages and Claims Expenses shall not exceed:

1.   the amount for which the Claim could have been settled, less the remaining Each Claim Deductible, plus the Claims Expenses incurred up to the time of such refusal, and

2.   thirty percent (30%) of any Damages and Claims Expenses incurred after the date such settlement or compromise was recommended to the Named Assured with the remaining seventy percent (70%) of such Damages and Claims Expenses to be borne by the Assured at their own risk and uninsured

or the applicable Limit of Liability, whichever is less. The portion of any proposed settlement or compromise that requires the Assured to cease, limit or refrain from actual or alleged infringing or otherwise injurious activity or is attributable to future royalties or other amounts that are not Damages shall not be considered in determining the amount for which a Claim could have been settled.

F.   It is further provided that the Underwriters shall not be obligated to pay any Damages or Claims Expenses, or to undertake or continue defense of any suit or proceeding after the applicable Limit of Liability has been exhausted by payment of Damages and/or Claims Expenses or after deposit of the applicable Limit of Liability in a court of competent jurisdiction, and that upon such payment, the Underwriters shall have the right to withdraw from the further defense thereof by tendering control of said defense to the Assured.

## IV.   TERRITORY

This Certificate applies to Claims made and acts, errors or omissions or Pollution Conditions committed or arising anywhere in the world.

## V.   EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS

The coverage under this Insurance does not apply to Damages or Claims Expenses in connection with or resulting from any Claim:

A.   Criminal, Dishonest, Intentional, Fraudulent, Malicious, Willful or Knowing Acts

arising out of or resulting from any criminal, dishonest, intentional, fraudulent, malicious, willful or knowing act, error or omission committed by any Assured; however, this Certificate shall apply to Claims Expenses incurred in defending any such Claim alleging the foregoing until such time as there is a final adjudication, judgment, binding arbitration decision or conviction against the Assured, or admission by the Assured, establishing such criminal, dishonest, intentional, fraudulent, malicious willful or knowing conduct, or a plea of *nolo contendere* or no contest regarding such conduct, at which time the Named

Assured shall reimburse Underwriters for all Claims Expenses incurred defending the Claim and Underwriters shall have no further liability for Claims Expenses.

Provided, that this exclusion shall not apply to any Claim based upon or arising from the Assured's unintentional breach of a written agreement to refrain from disclosing confidential or proprietary information in rendering or failure to render Professional Services or in the performance of or failure to perform Contracting Services.

B.  Prior Knowledge, Prior Notice and Prior Acts

    1.  arising out of or resulting from any act, error or omission or Pollution Condition committed or arising prior to the inception date of this Insurance:

        a.  if any director, officer, principal, partner, insurance manager or any member of the risk management or legal department of the Named Assured on or before the inception date knew or could have reasonably foreseen that such act, error or omission or Pollution Condition might be expected to be the basis of a Claim; or

        b.  in respect of which any Assured has given notice of a Circumstance to the insurer of any other policy or certificate in force prior to the inception date of this Certificate; or

    2.  arising out of related or continuing acts, errors or omissions or Pollution Conditions where the first such act, error or omission or Pollution Condition was committed or arose prior to the Retroactive Date set forth in Item 6. of the Declarations.

C.  Assured versus Assured

by or on behalf of one or more Assureds under this Insurance against any other Assured or Assureds under this Insurance; provided, that this exclusion shall not apply to a Claim by or on behalf of any client of the Named Assured who is an Assured by virtue of Clause VII. D. 8.

D.  Ownership Interest and Outside Positions

    1.  arising out of or resulting from any Assured's activities as a trustee, partner, officer, director or employee of any employee trust, charitable organization, corporation, company or business other than that of the Named Assured; or

    2.  made by any entity, arising out of Professional Services, Contracting Services, Media Activities or Technology Based Services performed for such entity, or Technology Products provided to such entity which:

        a.  is operated, managed or controlled by an Assured or in which any Assured has an ownership interest in excess of 25%; or in which any Assured is an officer or director; or

        b.  operates, controls or manages the Named Assured, or has an ownership interest of more than 15% in the Named Assured.

E.  Discrimination, Humiliation, Harassment and Misconduct

for or arising out of or resulting from any actual or alleged discrimination, humiliation, harassment or misconduct because of age, color, race, sex, creed, national origin, marital status, sexual preference or orientation, religion, disability or pregnancy; provided, that this exclusion shall not apply to any Claim based upon the Americans with Disabilities Act of 1990 (ADA), as amended, or the Fair Housing Act (FHA), or any state or local versions of those acts, and arising out of the Assured's rendering or failure to render Professional Services.

F.  Assumption of Contractual Liability of Others

arising out of or resulting from the liability of others assumed by the Assured under any contract or agreement either oral or written, including any hold harmless or indemnity agreements, except:

1.  with respect to Insuring Agreement F. for liability Assumed under Contract; or

2.  to the extent the Assured would have been liable in the absence of such contract or agreement.

G.  Express Warranties, Representations, Guarantees and Promises

for or arising out of or resulting from:

1.  breach of any express warranty or representation except for an agreement to perform within a reasonable standard of care or skill consistent with applicable industry standards; or

2.  breach of guarantee or any promises of cost savings, profits, or return on investment.

H.  Faulty Workmanship

under Insuring Agreement A. arising out of the cost to repair or replace any faulty workmanship performed in whole or in part by any Assured on any construction, erection, fabrication, installation, assembly, manufacture or remediation, including any materials, parts, labor or equipment furnished in connection with such repair or replacement.

I.  Asbestos

either in whole or in part, directly or indirectly, arising out of or resulting from or in consequence of, or in any way involving asbestos, or any materials containing asbestos in whatever form or quantity; provided, that this exclusion does not apply to any Claim arising out of any negligent act, error or omission in rendering or failure to render Professional Services on or after 1st January 1990 or the Retroactive Date set forth in Item 6. of the Declarations (whichever is the later) by or on behalf of the Assured.

J.  Employers Liability

for or arising out of or resulting from:

1.  Bodily Injury to any employee of the Named Assured arising out of and in the course of employment by the Named Assured; or

2.  the Named Assured's employment obligations, decisions, practices or policies as an employer.

K.  Worker's Compensation

arising out of any obligation which the Assured or any carrier as insurer may be liable under any worker's compensation, unemployment compensation or disability benefits law or similar law.

L.  Property Liability

arising out of or resulting from the Assured's ownership, rental, lease, maintenance, operation, use, repair, voluntary or involuntary sale, transfer, exchange, gift, abandonment or condemnation of any real or personal property including without limitation, automobiles, aircraft, watercraft and other kinds of conveyances.

M.  Products Liability

arising out of or resulting from the design or manufacture of any goods or products for multiple sales or mass distribution which are sold or supplied by the Assured or by others under license from the Assured; provided, that this exclusion shall not apply to any Claim which is covered pursuant to Insuring Agreement D. of this Certificate.

N.   Transportation, Shipment or Delivery of Waste, Products or Materials

under Insuring Agreement B. arising out of or resulting from any waste or any products or materials transported, shipped or delivered via watercraft, mobile equipment or rolling stock to a location beyond the boundaries of a site at which Professional Services are being rendered or Contracting Services are being performed.

O.   Property Damage to Named Assured's Work and Products

under Insuring Agreement B. for any Property Damage:

1.   to work performed by or on behalf of the Named Assured resulting from the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith; or

2.   to any goods or products which are sold or supplied by the Assured or by others under license from the Assured resulting from such goods or products or any portion thereof.

P.   Patent Infringement

for or arising out of actual or alleged infringement of patent or patent rights or misuse of patent.

Q.   Failure to Maintain Insurance

arising out of or resulting from the advising or requiring of, or failure to advise or require, or failure to maintain any form of insurance, suretyship or bond, either with respect to the Assured or any other person or entity.

R.   Insolvency and Bankruptcy

arising out of or resulting from the insolvency or bankruptcy of any Assured or of any other entity including but not limited to the failure, inability, or unwillingness to pay Claims, losses, or benefits due to the insolvency, liquidation or bankruptcy of any such individual or entity.

S.   War and Terrorism

directly or indirectly caused by, resulting from or in connection with:

1.   any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

   a.   war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war is declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

   b.   any act of terrorism.

2.   any action taken in controlling, preventing, suppressing or in any way relating to a. or b. above.

For the purpose of this exclusion, an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s)

of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

If the Underwriters allege that by reason of this exclusion, any Damages or Claims Expenses are not covered by this Insurance, the burden of proving the contrary shall be upon the Assured.

In the event any portion of this exclusion is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

## VI. EXCLUSIONS APPLICABLE TO INSURING AGREEMENTS C., D., E., F. AND G.

The coverage under Insuring Agreements C., D., E., F. and/or G. of this Insurance does not apply to Damages or Claims Expenses in connection with or resulting from any Claim:

A. Contractual Liability

arising out of or resulting from:

1. any contractual liability or obligation, or arising out of or resulting from breach of contract or agreement either oral or written, except:

   a. with respect to:

      i. Insuring Agreement C. for breach of an agreement by the Named Assured to perform Technology Based Services; or

      ii. Insuring Agreement D. for breach of an agreement by the Named Assured to manufacture, develop, create, distribute, license, lease or sell Technology Products;

      this exclusion shall not apply to breach of any hold harmless or indemnity agreement;

   b. with respect to Insuring Agreement F. for liability:

      i. Assumed under Contract; or

      ii. misappropriation of ideas under an implied contract; or

   c. with respect to Insuring Agreement G. for liability or any obligation under a confidentiality or non-disclosure agreement with regards to Personally Identifiable Non-Public Information or Third Party Corporate Information; or

   d. to the extent the Assured would have been liable in the absence of such contract or agreement; or

2. breach of any contractual obligation which goes beyond an express or implied duty to exercise a degree of care or skill as is consistent with applicable industry standards.

B. Business Risks

for or arising out of or resulting from:

1. inaccurate, inadequate or incomplete description of the price of goods, products or services;

2. cost guarantees, cost representations, or contract price estimates of probable costs or cost estimates actually or allegedly being exceeded;

    3.     the failure of goods, products, or services to conform with any represented quality or performance contained in Advertising; or

    4.     any actual or alleged gambling, contest, lottery, promotional game or other game of chance.

C.    Licensing Fees and Royalty Payments

arising out of or resulting from any actual or alleged obligation to make licensing fee or royalty payments, including but not limited to the amount or timeliness of such payments.

D.    Reprinting, Recall, Removal, Disposal, Withdrawal, Inspection, Repair, Replacement, Reproduction Costs and Expenses

for or arising out of or resulting from any costs or expenses incurred or to be incurred by the Assured or others for:

    1.     the reprinting, recall, removal or disposal of any Media Material, including any media or products containing such Media Material; or

    2.     the withdrawal, recall, inspection, repair, replacement, reproduction, removal or disposal of:

        a.     Technology Products, including any products or other property of others that incorporate Technology Products;

        b.     work product resulting from or incorporating the results of Technology Based Services; or

        c.     any products or other property on which Technology Based Services are performed;

provided, that this exclusion shall not apply to Claims for the resulting loss of use of such Media Material or Technology Products, or loss of use of the work product resulting from such Technology Based Services.

E.    Electrical and Telecommunications Failure and Malfunction and Force Majeure

arising out of, resulting from or alleging:

    1.     any failure or malfunction of electrical or telecommunications infrastructure or services, unless under the Named Assured's operational control; or

    2.     fire, flood, earthquake, volcanic eruption, explosion, lightning, wind, hail, tidal wave, landslide, act of God or other physical or force majeure event.

F.    Antitrust

for or arising out of any actual or alleged antitrust violation, restraint of trade, unfair competition, violation of the Sherman Antitrust Act, the Clayton Act, the Robinson-Patman Act, as amended, or any similar law or legislation of any state, province or other jurisdiction, false, deceptive or unfair trade practices, violation of consumer protection laws or false or deceptive or misleading advertising.

G.    Federal Trade Commission and Federal Communications Commission

brought by or on behalf of the Federal Trade Commission, the Federal Communications Commission, or any similar governmental entity, in such entity's regulatory or official capacity.

H.    Copyright and Trade Secret Infringement of Technology Products

for or arising out of actual or alleged infringement of copyright or misappropriation of trade secret arising out of or related to Technology Products.

I.    Electromagnetic Fields and Radiation

for or arising out of or resulting from the existence, emission or discharge of any electromagnetic field, electromagnetic radiation or electromagnetism that actually or allegedly affects the health, safety or condition of any person or the environment, or that affects the value, marketability, condition or use of any property.

J.    Delay in Delivery or Performance

for or arising out of or resulting from delay in delivery or performance, or failure to deliver or perform at or within an agreed upon period of time.

## VII.    DEFINITIONS

Wherever used in this Certificate, the following definitions shall apply.

A.    "Advertising" means material which promotes the product, service or business of the Named Assured or others.

B.    "Application" means all signed applications, including all attachments and other materials submitted therewith or incorporated therein, and any other such documents submitted in connection with the underwriting of this Certificate including any endorsement or other part thereof, or any other Certificate issued by Underwriters, of which this Certificate is a renewal, replacement or which it succeeds in time.

C.    "Assumed Under Contract" means liability assumed by the Named Assured under a written hold harmless or indemnity agreement regarding the content of Media Material used in a Media Communication, but only as respects acts for which insurance is afforded under Insuring Agreement F.

D.    "Assured", whether expressed in singular or plural, "Assured" shall mean:

1.    the Named Assured;

2.    a director or officer of the Named Assured, but only with respect to the performance of his or her duties as such on behalf of the Named Assured;

3.    an employee or Temporary Employee of the Named Assured, but only for work done while acting within the scope of his or her employment and related to the conduct of the Named Assured's business;

4.    a principal if the Named Assured is a sole proprietorship, or a partner if the Named Assured is a partnership, but only with respect to the performance of his or her duties as such on behalf of the Named Assured;

5.    any person who previously qualified as an Assured under 2, 3 or 4. above prior to the termination of the required relationship with the Named Assured, but only with respect to the performance of his or her duties as such on behalf of the Named Assured;

6.    the estate, heirs, executors, administrators, assigns and legal representatives of any Assured in the event of such Assured's death, incapacity, insolvency or bankruptcy, but only to the extent that such Assured would otherwise be provided coverage under this Insurance;

7.    in the Named Assured with regard to its participation in a joint venture, but solely for the Named Assured's liability that arises out of a negligent act, error or omission in rendering or failure to render Professional Services by the Named Assured or for a Pollution Condition that arises out of the rendering of or failure to

render Professional Services or the performance of or failure to perform Contracting Services by the Named Assured; and

8.    solely with respect to Insuring Agreement B., the client for whom the Named Assured renders or rendered Professional Services or performs or performed Contracting Services, provided that a written contract or agreement is in effect between the Named Assured and the client requiring the client to be an additional assured under the Named Assured's architects, engineers and contractors pollution liability Certificate.  However, such clients are covered under Insuring Agreement B. of this Certificate solely with respect to Damages and Claims Expenses arising from Professional Services rendered or Contracting Services performed by or on behalf of the Named Assured and are not covered for any Damages and Claims Expenses arising from the client's own acts, errors or omissions.  Clients of the Named Assured are covered under Insuring Agreement B. of this Certificate, subject to Clause IX., only for the Limits of Liability required by the written contract or agreement.

E.    "Bodily Injury" means physical injury, sickness, disease or death of any person, including any mental anguish or emotional distress resulting therefrom.

F.    "Breach Notice Law" means any state, federal or foreign statute or regulation that requires notice to persons whose Personally Identifiable Non-Public Information was accessed or may reasonably have been accessed by an unauthorized person.

G.    "Certificate Period" means the period of time between the inception date shown in the Declarations and the effective date of termination, expiration or cancellation of this Insurance and specifically excludes any Optional Extension Period or any prior policy or certificate period or renewal period.

H.    "Circumstance" means any fact, event  or situation that could reasonably be the basis for a Claim.

I.    "Claim" means a demand received by any Assured for money or services including the service of suit or institution of arbitration proceedings.  "Claim" shall also mean a threat or initiation of a suit seeking injunctive relief (meaning a temporary restraining order or a preliminary or permanent injunction).

Multiple Claims arising from the same or a series of related or repeated acts, errors, omissions or Pollution Conditions or from any continuing acts, errors, omissions or Pollution Conditions shall be considered a single Claim for the purposes of this Certificate, irrespective of the number of Claimants or Assureds involved in the Claim.  All such Claims shall be deemed to have been made at the time of the first such Claim.

J.    "Claims Expenses" means:

1.    reasonable and necessary fees charged by an attorney designated or consented to by the Underwriters;

2.    all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a Claim, suit or proceeding arising in connection therewith, if incurred by the Underwriters, or by the Assured with the prior written consent of the Underwriters; and

3.    premiums for appeal bonds for covered judgments or bonds to release property used to secure a legal obligation, if required for a Claim against any Assured for a covered act, error or omission, provided however that the Underwriters shall have no obligation to appeal or to obtain such bonds.

Claims Expenses do not include any salary, overhead or other charges of or by the Assured for any time spent in cooperating in the defense and investigation of any Claim notified under this Insurance.

K.  "Cleanup Costs" means reasonable and necessary costs, charges and expenses incurred with the prior written consent of the Underwriters in the investigation, removal or neutralization of a Pollution Condition, provided that such costs, charges and expenses are caused by a Pollution Condition arising out of the rendering of or failure to render Professional Services or the performance of or failure to perform Contracting Services by or on behalf of the Named Assured.

L.  "Computer Systems" means computers and associated input and output devices, data storage devices, networking equipment, and back up facilities:

   1.  operated by and either owned by or leased to the Named Assured; or

   2.  operated by a third party service provider and used for the purpose of providing hosted computer application services to the Named Assured or for processing, maintaining, hosting or storing the Named Assured's electronic data, pursuant to written contract with the Named Assured for such services.

M.  "Contracting Services" means the performance of construction, drilling or remediation activities by or on behalf of the Named Assured.

N.  "Damages" means a monetary judgment, award or settlement of compensatory damages, including any pre-judgment and/or post-judgment interest thereon.

   The term Damages shall not include or mean:

   1.  future profits, restitution, disgorgement of unjust enrichment or profits by an Assured, or the costs of an Assured to comply with orders granting injunctive or equitable relief;

   2.  return or offset of fees, charges, or commissions for goods or services already provided or contracted to be provided;

   3.  costs incurred by the Assured to correct, re-perform or complete any Media Activities or Technology Based Services;

   4.  any damages which are a multiple of compensatory damages;

   5.  fines, taxes or loss of tax benefits, sanctions or penalties assessed against the Assured;

   6.  punitive or exemplary damages, unless insurable by law under the law under which this Certificate is construed;

   7.  discounts, coupons, prizes, awards or other incentives offered to the Assured's customers or clients;

   8.  liquidated damages to the extent that such damages exceed the amount for which the Assured would have been liable in the absence of such liquidated damages agreement; or

   9.  any amounts for which the Assured is not liable, or for which there is no legal recourse against the Assured.

   10. matters deemed uninsurable under the law pursuant to which this Certificate shall be construed.

O.  "Malicious Code" means any virus, Trojan Horse, worm or other similar software program, code or script intentionally designed to insert itself into computer memory or onto a computer disk and spread itself from one computer to another.

P.  "Media Communication" means the display, broadcast, dissemination, distribution or release of Media Material to the public by the Named Assured.

Q.    "Media Material" means information in the form of words, sounds, numbers, images, or graphics in electronic, print or broadcast form, including Advertising, but does not mean computer software.

R.    "Media Activities" means Media Communications and/or the gathering, collection or recording of Media Material for inclusion in any Media Communication in the ordinary course of the Named Assured's business.

S.    "Named Assured" means only those persons, partnerships, corporations or entities specified in Item 1 of the Declarations.

The term Named Assured shall include any corporate entity while more than fifty percent (50%) of the outstanding securities representing the present right to vote for the election such entity's directors are owned by the Named Assured if such entity becomes so owned after the inception date of the Certificate, subject to the terms and conditions of Clause XVII. A.

T.    "Optional Extension Period" means the period of time after the end of the Certificate Period for reporting Claims as provided in Clause XII. of this Certificate.

U.    "Personally Identifiable Non-Public Information" means an individual's name in combination with one or more of the following:

1.    information concerning the individual that constitutes "non-public personal information" as defined in the Gramm-Leach Bliley Act of 1999, as amended, and regulations issued pursuant to the Act;

2.    medical or heath care information concerning the individual, including "protected health information" as defined in the Health Insurance Portability and Accountability Act of 1996, as amended, and regulations issued pursuant to the Act; or

3.    the individuals social security number, drivers license or state identification number, credit, debit or other financial account numbers and associated security codes, access codes, passwords or pins that allows access to the individual's financial account information.

V.    "Pollution Condition" means the actual or alleged discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water, which results in Bodily Injury, Property Damage or Cleanup Costs.

W.    "Privacy Policy" means the internal or publicly accessible written documents that set forth the Named Assured's policies, standards and procedures for collection, use, disclosure, sharing, dissemination and correction or supplementation of, and access to, Personally Identifiable Non-Public Information.

X.    "Professional Services" means those services performed for others by or on behalf of the Named Assured in the capacity as an architect, engineer, land surveyor, landscape architect, interior designer, construction manager, project manager, forensic consultant, environmental consultant or design, construction or project consultant or planner.

Y.    "Property Damage" means:

1.    physical injury to or destruction of any tangible property, including the loss of use thereof; or

2.    loss of use of tangible property that has not been physically injured or destroyed.

Z.    "Technology Based Services" means computer and electronic technology services, including data processing, Internet services, data and application hosting, computer

systems analysis, technology consulting and training, custom software programming for a specific client of the Named Assured, computer and software systems installation and integration, computer and software support, and network management services performed by the Assured, or by others acting under the Named Assured's trade name, for others for a fee, but shall not mean Technology Products.

AA. "Security Breach" means Unauthorized Access of Computer Systems, infection of Computer Systems by Malicious Code or transmission of Malicious Code from Computer Systems, whether any of the foregoing is specifically targeted attack or a generally distributed attack. A series of continuing Security Breaches or related or repeated Security Breaches shall be considered a single Security Breach and be deemed to have occurred at the time of the first such Security Breach.

BB. "Technology Products" means a computer or telecommunications hardware or software product, or related electronic product that is created, manufactured or developed by the Named Assured for others, or distributed, licensed, leased or sold by the Named Assured to others, for compensation, including software updates, service packs and other maintenance releases provided for such products.

CC. "Temporary Employee" means a natural person furnished or leased to the Named Assured to meet short term or project specific workloads and for whom the Named Assured has the right to direct and control the means of performance.

DD. "Theft of Data" means the unauthorized taking, misuse or disclosure of information on Computer Systems, including but not limited to charge, debit, and credit card information, banking, financial, and investment services account information, proprietary information, and personal, private, and confidential information.

EE. "Third Party Corporate Information" means any trade secret, data, design, interpretation, forecast, formula, method, practice, process, record, report or other item of information of a third party not insured under this Certificate which is not available to the general public and is provided to the Assured subject to a mutually executed written confidentiality agreement or marked "confidential" in writing by such third party.

FF. "Unauthorized Access" means:

1. the use of or access to Computer Systems by a person not authorized to do so by the Named Assured; or

2. the authorized use of or access to Computer Systems in a manner not authorized by the Named Assured.

## VIII. LIMIT OF LIABILITY

A. The Limit of Liability stated in Item 3.(a) of the Declarations for "Each Claim" is the limit of the Underwriters' liability for all Damages and Claims Expenses arising out of each Claim.

B. The "Aggregate for the Certificate Period" stated in Item 3.(b) of the Declarations is the Underwriters' combined total Limit of Liability for all Damages and Claims Expenses arising out of all Claims or Circumstances which are covered under the terms and conditions of this Certificate, and neither the inclusion of more than one Assured under this Certificate, nor the making of Claims by more than one person or entity shall increase the Limit of Liability.

C. The Limit of Liability for the Optional Extension Period shall be part of and not in addition to the Limit of Liability of the Underwriters for the Certificate Period.

## IX. DEDUCTIBLE

A. The "Each Claim Deductible" stated in Item 4. of the Declarations applies separately to each Claim. The Each Claim Deductible shall be satisfied by monetary payments by the

Named Assured of Damages and Claims Expenses resulting from Claims first made during the Certificate Period and the Optional Extension Period and reported to the Underwriters pursuant to the terms of this Certificate. Satisfaction of the Each Claim Deductible is a condition precedent to the payment by the Underwriters of any amounts hereunder, and the Underwriters shall be liable only for the amounts in excess of the Each Claim Deductible subject to the Underwriters' total liability not exceeding the Limits of Liability stated in Items 3.(a) and 3.(b) of the Declarations. The Named Assured shall make direct payments within the Each Claim Deductible to appropriate other parties designated by the Underwriters.

B. Any payments by the Named Assured in satisfaction of its deductible obligations under any other valid and collectible insurance shall not satisfy the Each Claim Deductible under this Policy.

## X.    INNOCENT ASSURED

A. Whenever coverage under this Insurance would be excluded, suspended or lost because of Exclusion V.A relating to criminal, dishonest, intentional, fraudulent, malicious, willful or knowing acts, errors or omissions by any Assured, and with respect to which any other Assured did not personally participate or personally acquiesce or remain passive after having personal knowledge thereof, then the Underwriters agree that such insurance as would otherwise be afforded under this Certificate shall cover and be paid with respect to those Assureds who did not personally commit or personally participate in committing or personally acquiesce in or remain passive after having personal knowledge of one or more of the acts, errors or omissions described in Exclusion V.A.

This provision is inapplicable to any Claim or Circumstance against the Named Assured arising from acts, errors or omissions known to any present or former principal, partner, director or officer of the Named Assured.

B. With respect to this provision, the Underwriters' obligation to pay in such event shall only be in excess of the full extent of any recoverable assets of any Assured to whom Exclusion V.A. applies and shall be subject to the terms, conditions and limitations of this Certificate.

## XI.    NOTICE OF CLAIM OR CIRCUMSTANCE

A. If any Claim is made against an Assured, the Assured shall forward as soon as practicable to the Underwriters through the persons named in Item 9. of the Declarations written notice of such Claim in the form of a telecopy, or express or certified mail together with every demand, notice, summons or other process received by the Assured or the Assured's representative, but in no event later than sixty (60) days after the expiration of the Certificate Period or the last day of the Optional Extension Period, if purchased.

B. If during the Certificate Period any director, officer, principal, partner, insurance manager or any member of the risk management or legal department of the Named Assured first becomes aware of any Circumstance and gives written notice to the Underwriters in the form of a telecopy, or express or certified mail through persons named in Item 9. of the Declarations as soon as practicable during the Certificate Period of:

1. the specific details of the act, error or omission or Pollution Condition in the provision of Professional Services, Contracting Services, Media Activities or Technology Based Services or relating to Technology Products that gave rise to the Circumstance;

2. the injury or damage which may result or has resulted from the Circumstance; and

3.      the facts by which such director, officer, principal, partner, insurance manager or any member of the risk management or legal department of the Named Assured first became aware of the act, error or omission or Pollution Condition

then any subsequent Claim made against the Assured arising directly out of such Circumstance which is the specific subject of the written notice will be deemed to have been made at the time written notice complying with the above requirements was first given to the Underwriters.

C.      A Claim shall be considered to be reported to the Underwriters when written notice is first received by the Underwriters in the form of a telecopy, or express or certified mail through persons named in Item 9. of the Declarations of the Claim or of a Circumstance if provided in compliance with Clause B. above.

D.      If any Assured shall make any Claim under this Certificate knowing such Claim to be false or fraudulent, as regards amount or otherwise, this Certificate shall become null and void and all coverage hereunder shall be forfeited.

## XII.    OPTIONAL EXTENSION PERIOD

A.      If this Certificate is cancelled or non-renewed by the Underwriters or the Named Assured designated in Item 1. of the Declarations, then the Named Assured shall have the right, upon payment of an additional premium calculated at that percentage shown in Item 8 of the Declarations of the total premium for this Certificate, to an extension of the coverage granted by this Certificate with respect to any Claim first made against any Assured and reported in writing to the Underwriters during the period of time set forth in Item 8 of the Declarations after the end of the Certificate Period, but only with respect to any act, error or omission or Pollution Condition committed or arising on or after the Retroactive Date and before the effective date of cancellation or non-renewal.

B.      As a condition precedent to the right to purchase the Optional Extension Period, the total premium for this Certificate must have been paid.  The right to purchase the Optional Extension Period shall terminate unless written notice together with full payment of the premium for the Optional Extension Period is given to the Underwriters within thirty (30) days after the effective date of cancellation or non-renewal.  If such notice and premium payment is not so given to the Underwriters, there shall be no right to purchase the Optional Extension Period.

C.      In the event of the purchase of the Optional Extension Period, the entire premium for the Optional Extension Period shall be deemed earned at its commencement.

D.      The Limit of Liability for the Optional Extension Period shall be part of and not in addition to the Limit of Liability of the Underwriters for the Certificate Period.

E.      The offer of renewal terms, conditions or premiums different from those in effect prior to renewal shall not constitute a refusal to renew for purposes of this Clause XII.

F.      All notices and premium payments made under this clause shall be directed to Underwriters through the entity named in Item 9. of the Declarations.

## XIII.   REPRESENTATIONS

By acceptance of this Certificate, all Assureds agree that the statements contained in the Application are their agreements and representations, that they shall be deemed material to the risk assumed by the Underwriters, and that this Certificate is issued in reliance upon the truth thereof.

The misrepresentation or non-disclosure of any matter by the Assured or its agent in the Application will render the Certificate null and void and relieve the Underwriters from all liability under the Certificate.

### XIV. OTHER INSURANCE

This Insurance shall apply in excess of:

A. any other valid and collectible insurance available to any Assured, including, but not limited to, any project specific professional liability and/or contractors pollution liability insurance; and

B. any self insured retention or deductible portion thereof

C. unless such other insurance is written only as specific excess insurance over the Limit of Liability of this Certificate.

### XV. ASSIGNMENT

The interest hereunder of any Assured is not assignable. If an Assured shall die or be adjudged incompetent, such insurance shall cover that Assured's legal representative as an Assured as would be permitted by this Certificate.

### XVI. CANCELLATION

A. The Named Assured may cancel this Certificate by surrender thereof to the Underwriters through the entity named in Item 9. of the Declarations, or by mailing to the Underwriters through the entity named in Item 9. of the Declarations written notice stating when thereafter such cancellation shall be effective. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the Certificate Period. Delivery of such written notice shall be equivalent to mailing.

B. The Underwriters may cancel this Certificate by mailing or delivering to the Named Assured at the address shown in the Declarations written notice stating when, not less than sixty (60) days thereafter, such cancellation shall be effective. However, if the Underwriters cancel this Certificate because the Assured has failed to pay a premium when due, this Certificate may be cancelled by the Underwriters by mailing or delivering a written notice of cancellation to the Named Assured at the address shown in the Declarations stating when not less than ten (10) days thereafter such cancellation shall be effective. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the Certificate Period. Delivery of such written notice by the Underwriters shall be equivalent to mailing.

C. If this Certificate is cancelled pursuant to A. hereinabove, the Underwriters shall retain the short rate portion of the premium hereon calculated in accordance with the Short Rate Cancellation Table set forth in Clause XXIX. of this Certificate. If this Certificate is cancelled pursuant to B. hereinabove, the Underwriters shall retain the pro rata portion of the premium hereon. Payment or tender of any unearned premium by the Underwriters shall not be a condition precedent to the effectiveness of cancellation.

### XVII. MERGERS AND ACQUISITIONS

A. If during the Certificate Period, the Named Assured acquires another entity for whom more than fifty per cent (50%) of the outstanding securities representing the present right to vote for the election of such entity's directors are owned by the Named Assured, then no Assured shall have coverage under this Certificate for any Claim that arises out of any act, error or omission or Pollution Condition, whether committed or arising either before or after such acquisition:

1. by the acquired entity or any person employed by the acquired entity; or

2. involving or relating to the assets, liabilities, or Computer Systems of the acquired entity.

The foregoing provision shall not apply if the Named Assured gives the Underwriters written notice within sixty (60) days after the effective date of the acquisition, obtains the written consent of the Underwriters to extend coverage to such additional entities, assets or exposures, and agrees to pay any additional premium required by the Underwriters.

B.   If during the Certificate Period the Named Assured consolidates or merges with another entity such that the Named Assured is not the surviving entity, is acquired by another entity, or sells substantially all of its assets to any other entity, then coverage under this Certificate shall not apply to acts, errors or omissions or Pollution Conditions committed or arising subsequent to such consolidation, merger or acquisition and Underwriters shall retain the total premium for this Certificate, such total premium to be deemed earned at the date of such consolidation, merger or acquisition. The Named Assured shall provide written notice of such consolidation, merger or acquisition to the Underwriters as soon as practicable, together with such information as the Underwriters may require.

C.   All notices and premium payments made under this section shall be directed to the Underwriters through the entity named in Item 9. of the Declarations.

## XVIII.   ASSISTANCE AND COOPERATION OF THE ASSURED

The Assured shall cooperate with the Underwriters in all investigations, including investigations regarding the Application for and coverage under this Certificate. The Assured shall execute or cause to be executed all papers and render all assistance as is requested by the Underwriters. The Assured agrees not to take any action which in any way increases the Underwriters' exposure under the Certificate.

Upon the Underwriters' request, the Assured shall assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the Assured because of acts, errors or omissions or Pollution Conditions with respect to which insurance is afforded under this Certificate; and the Assured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.

The Assured shall not admit liability, make any payment, assume any obligations, incur any expense, enter into any settlement, stipulate to any judgment or award or dispose of any Claim without the written consent of the Underwriters.

Except as provided for in Clause II.A., expenses incurred by the Assured in assisting and cooperating with the Underwriters, as described above, do not constitute Claims Expenses and are not reimbursable under the Certificate.

## XIX.   ACTION AGAINST UNDERWRITERS

No action shall lie against the Underwriters unless, as a condition precedent thereto, the Assured shall have fully complied with all of the terms of this Certificate, nor until the amount of the Assured's obligation to pay shall have been fully and finally determined either by judgment against them or by written agreement between them, the claimant and the Underwriters. Nothing contained herein shall give any person or organization any right to join the Underwriters as a party to any Claim against the Assured to determine their liability, nor shall the Underwriters be impleaded by the Assureds or their legal representative in any Claim.

## XX.   SUBROGATION

In the event of any payment under this Insurance, the Underwriters shall be subrogated to all the Assureds' rights of recovery therefore against any person or organization, and the Assured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Assured shall do nothing to prejudice such rights. The Underwriters agree to waive their rights of recovery against any client of the Named Assured for a Claim which is covered pursuant to Insuring Agreements A. and/or B. of this Certificate to

the extent the Named Assured had, prior to such Claim, a written agreement to waive such rights.  Any recoveries shall be applied first to subrogation expenses, second to Damages and Claims Expenses paid by the Underwriters, and third to the Each Claim Deductible.  Any additional amounts recovered shall be paid to the Named Assured.

**XXI.   ENTIRE AGREEMENT**

By acceptance of this Certificate, all Assureds agree that this Certificate embodies all agreements existing between them and the Underwriters relating to this Certificate.  Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Certificate or stop the Underwriters from asserting any right under the terms of this Certificate, nor shall the terms of this Certificate be waived or changed except by written endorsement issued to form a part of this Certificate, signed by the Underwriters.

**XXII.   VALUATION AND CURRENCY**

All premiums, limits, deductibles, Damages and other amounts under this Certificate are expressed and payable in the currency of the United States.  If judgment is rendered, settlement is denominated or another element of Damages under this Certificate is stated in a currency other than United States dollars or if Claims Expenses are paid in a currency other than United States dollars, payment under this Certificate shall be made in United States dollars at the rate of exchange published in the Wall Street Journal on the date the judgment becomes final or payment of the settlement or other element of Damages is due or the date such Claims Expenses are paid.

**XXIII.   BANKRUPTCY**

Bankruptcy or insolvency of the Assured shall not relieve the Underwriters of its obligations nor deprive the Underwriters of its rights or defenses under this Certificate.

**XXIV.   AUTHORIZATION**

By acceptance of this Certificate, the Assureds agree that the Named Assured set forth at Item 1. of the Declarations will act on their behalf with respect to the giving and receiving of any notice provided for in this Certificate, the payment of premiums and the receipt of any return premiums that may become due under this Certificate, and the agreement to and acceptance of endorsements.

**XXV.   SINGULAR FORM OF A WORD**

Whenever the singular form of a word is used herein, the same shall include the plural when required by context.

**XXVI.   HEADINGS**

The descriptions in the headings and subheadings of this Certificate are solely for convenience, and form no part of the terms and conditions of coverage.

**XXVII.   SERVICE OF SUIT**

It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due under this Insurance, Underwriters hereon, at the request of the Assured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States.  Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.  It is further agreed that service of process in such suit may be made upon Underwriters' representative, designated in Item 11. of the Declarations, and that in any suit instituted against any one of

them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The Underwriters' representative designated in Item 11. of the Declarations is authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of Insurance, and hereby designate the Underwriters' representative, designated in Item 11. of the Declarations, as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## XXVIII. CHOICE OF LAW

Any disputes involving this Certificate shall be resolved applying the law designated in Item 12. of the Declarations.

## XXIX. SHORT RATE CANCELLATION TABLE

Notwithstanding anything to the contrary contained herein and in consideration of the premium for which this Insurance is written it is agreed that in the event of cancellation thereof by the Assured the Earned Premium shall be computed as follows:-

A.   For insurances written for one year:-

| Days Insurance in Force | | Percent of One Year Premium | Days Insurance in Force | | Percent of One Year Premium |
|---|---|---|---|---|---|
| 1 - 54 | ................................. | 25 | 192 - 196 | ................................. | 63 |
| 55 - 58 | ................................. | 26 | 197 - 200 | ................................. | 64 |
| 59 - 62 | (2 months)........ | 27 | 201 - 205 | ................................. | 65 |
| 63 - 65 | ................................. | 28 | 206 - 209 | ................................. | 66 |
| 66 - 69 | ................................. | 29 | 210 - 214 | (7 months) ...... | 67 |
| 70 - 73 | ................................. | 30 | 215 - 218 | ................................. | 68 |
| 74 - 76 | ................................. | 31 | 219 - 223 | ................................. | 69 |
| 77 - 80 | ................................. | 32 | 224 - 228 | ................................. | 70 |
| 81 - 83 | ................................. | 33 | 229 - 232 | ................................. | 71 |
| 84 - 87 | ................................. | 34 | 233 - 237 | ................................. | 72 |
| 88 - 91 | (3 months) ...... | 35 | 238 - 241 | ................................. | 73 |
| 92 - 94 | ................................. | 36 | 242 - 246 | (8 months) ...... | 74 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 95 - 98 | .................................. | 37 | 247 - 250 | .................................. | 75 |
| 99 - 102 | .................................. | 38 | 251 - 255 | .................................. | 76 |
| 103 - 105 | .................................. | 39 | 256 - 260 | .................................. | 77 |
| 106 - 109 | .................................. | 40 | 261 - 264 | .................................. | 78 |
| 110 - 113 | .................................. | 41 | 265 - 269 | .................................. | 79 |
| 114 - 116 | .................................. | 42 | 270 - 273 | (9 months) ....... | 80 |
| 117 - 120 | .................................. | 43 | 274 - 278 | .................................. | 81 |
| 121 - 124 | (4 months) ...... | 44 | 279 - 282 | .................................. | 82 |
| 125 - 127 | .................................. | 45 | 283 - 287 | .................................. | 83 |
| 128 - 131 | .................................. | 46 | 288 - 291 | .................................. | 84 |
| 132 - 135 | .................................. | 47 | 292 - 296 | .................................. | 85 |
| 136 - 138 | .................................. | 48 | 297 - 301 | .................................. | 86 |
| 139 - 142 | .................................. | 49 | 302 - 305 | (10 months) ..... | 87 |
| 143 - 146 | .................................. | 50 | 306 - 310 | .................................. | 88 |
| 147 - 149 | .................................. | 51 | 311 - 314 | .................................. | 89 |
| 150 - 153 | (5 months) ...... | 52 | 315 - 319 | .................................. | 90 |
| 154 - 156 | .................................. | 53 | 320 - 323 | .................................. | 91 |
| 157 - 160 | .................................. | 54 | 324 - 328 | .................................. | 92 |
| 161 - 164 | .................................. | 55 | 329 - 332 | .................................. | 93 |
| 165 - 167 | .................................. | 56 | 333 - 337 | (11months)...... | 94 |
| 168 - 171 | .................................. | 57 | 338 - 342 | .................................. | 95 |
| 172 - 175 | .................................. | 58 | 343 - 346 | .................................. | 96 |
| 176 - 178 | .................................. | 59 | 347 - 351 | .................................. | 97 |
| 179 - 182 | (6 months) ...... | 60 | 352 - 355 | .................................. | 98 |
| 183 - 187 | .................................. | 61 | 356 - 360 | .................................. | 99 |
| 188 - 191 | ............................. | 62 | 361 - 365 | (12 months) ... | 100 |

B.   For Insurances written for more or less than one year:-

    1.   If insurance has been in force for 12 months or less, apply the standard short rate table for annual insurances to the full annual premium determined as for an insurance written for a term of one year.

B0621PALIN000217

2. If insurance has been in force for more than 12 months:

   a. Determine full annual premium as for an insurance written for a term of one year.

   b. Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata Earned Premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the insurance was originally written.

   c. Add premium produced in accordance with items (a) and (b) to obtain Earned Premium during full period insurance has been in force.

Furthermore and notwithstanding the foregoing, Underwriters shall retain the total premium for this Certificate, such total premium to be deemed earned upon inception of the Certificate if any Claim or Circumstance is reported to Underwriters under this Certificate on or before such date of cancellation.

**ENDORSEMENTS**

I.      **NUCLEAR INCIDENT EXCLUSION CLAUSE - LIABILITY - DIRECT (BROAD) - U.S.A.**

(Approved by Lloyd's Underwriters' Non-Marine Association)

*For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:-*

*Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability), not being insurances of the classifications to which the Nuclear Incident Exclusion Clause - Liability - Direct (Limited) applies.*

This Certificate

\* does not apply:-

A.      Under any Liability Coverage, to injury, sickness, disease, death or destruction

1.      with respect to which an insured under the Certificate is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

2.      resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this Certificate not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B.      Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

C.      Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

1.      the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

2.      the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

3.      the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion 3. applies only to injury to or destruction of property at such nuclear facility.

D.    As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiations in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph 1. or 2. thereof; "nuclear facility" means

1.    any nuclear reactor,

2.    any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

3.    any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams or uranium 235,

4.    any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

With respect to injury to or destruction of property, with word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Certificate to which it is attached.

* NOTE:- As respect policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

17/3/60
N.M.A. 1256 (amended)

II.    **RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE - LIABILITY – DIRECT - U.S.A.**

(Approved by Lloyd's Underwriters' Non-Marine Association)

For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause - Liability - Direct) to liability insurances affording worldwide coverage.

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Certificate does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

13/2/64
N.M.A. 1477 (amended)

### III. APPLICATION ENDORSEMENT

The Named Assured has completed an Application dated 2nd August 2017 and Underwriters have relied on the statements, representations and any supplemental materials submitted with the Application which are considered to be incorporated herein. This is held on file at the offices of Miller Insurance Services LLP.

### IV. SEVERAL LIABILITY NOTICE

The subscribing insurers' obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions. The subscribing insurers are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligations.

LSW1001 (Insurance)

### V. SANCTION AND LIMITATION EXCLUSION CLAUSE

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that re(insurer) to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or the United States of America.

LMA3100

### VI. DESIGN BUILD ENDORSEMENT

It is hereby understood and agreed that the following additional Exclusions (A-F) are added to this Certificate but only for projects:

1.  for which the Assured or any person, including an independent contractor, for who the Assured Organization is legally responsible renders Professional Services; and

2.  for which the Assured, any person, including an independent contractor, for who the Assured Organization is legally responsible, any entity under common ownership with the Assured Organization or any entity that has an ownership interest in the Assured Organization performs construction, erection, fabrication, installation, assembly, manufacture or the supply of equipment or materials incorporated therein.

Exclusions

The coverage under this Insurance does not apply to Damages or Claims Expenses in connection with or resulting from any Claim:

A.  Acquisition of Real Estate

arising out of or resulting from the acquisition of any real estate or the securing of financing for the acquisition of any real estate.

B.  Failure to Maintain Finance

arising out of or resulting from the advising or requiring of, or failure to advise or require, or failure to maintain or procure any financing or monies for the payment of any portion of any project, or of services or labor connected with any project.

C.  Cost Overruns

for or arising out of or resulting from cost guarantees, cost representations, or contract price estimates of probable costs or cost estimates actually or allegedly being exceeded unless

arising out of a negligent act, error or omission in rendering or failure to render Professional Services.

D. Delay in Construction, Erection, Fabrication, Installation and Assembly

for or arising out of or resulting from delay in construction, erection, fabrication, installation or assembly, or failure to complete any construction, erection, fabrication, installation or assembly at or within an agreed upon period of time unless arising out of a negligent act, error or omission in rendering or failure to render Professional Services.

E. Preparation or Failure to Prepare Safety Precautions or Procedures

arising out of or resulting from the preparation or failure to prepare any safety precautions or procedures in connection with any project.

F. Preparation or Failure to Prepare Quantity Surveys

arising out of or resulting from the preparation or failure to prepare quantity surveys.

## VII. GENERAL, PRODUCTS AND COMPLETED OPERATIONS LIABILITY WARRANTY AND EXCLUSION ENDORSEMENT

It is a condition hereunder that the Assured maintain General Liability, Products Liability and Completed Operations Liability Insurance with a limit of liability at least equal to that afforded by this Certificate, except for any reduction of said limit due to the liability to pay Damages or Claims Expenses thereunder.

This Certificate does not apply to any Damages or Claims Expenses, covered by the General Liability, Products Liability and Completed Operations Liability Insurance required to be maintained as a condition of this Certificate, or any Excess Coverage.

In the event that General Liability, Product Liability and Completed Operations Liability Insurance and Excess Coverage maintained by the Assured is adjudged not to cover the Assured's legal liability, this Certificate will provide coverage pursuant to this Certificate's terms and conditions.

Should the Assured fail to maintain Products Liability and Completed Operations Liability Insurance, Underwriters reserve the right to cancel this Certificate with respect to any Claim from the date of such failure or the date of inception stated in the Declarations, whichever is the latter.

## VIII. MEDIATION ENDORSEMENT

A portion of the Deductible that is paid by the Assured for a Claim will be reimbursed to the Assured if that Claim is resolved fully and finally through the use of Formal Mediation, the Assured will be reimbursed up to fifty percent (50%) of that part of the Claim paid under the Deductible, but not to exceed a maximum reimbursement of USD25,000.

Formal Mediation means the voluntary and otherwise non-binding process by which a qualified, professional mediator mutually agreed upon intercedes between parties with the intention to reconcile them to resolve the Claim. The term Formal Mediation shall not include or mean other dispute resolution by litigation or arbitration.

## IX. NO CLAIMS DECLARATION ENDORSEMENT

The Named Assured has completed a No Claims Declaration dated 29th September 2017 which attaches to and forms part of the Application dated 2nd August 2017 and this is held on file at the offices of Miller Insurance Services LLP.

## X. RISK MANAGEMENT SERVICES TO BE PROVIDED BY DWF CLAIMS

## XI. MANUFACTURING ENDORSEMENT

This Endorsement modifies the Miller Professional Pollution Tech 2013 policy as follows:

**I. INSURING AGREEMENTS** is modified to include the following:

H. Manufacturers' Errors and Omissions Coverage

any Wrongful Act solely causing Financial Loss which is arising out of the rendering or failure to render Manufacturer's Services by the Assured or by any person for who the Named Assured is legally responsible, provided that such Wrongful Act or series of Wrongful Acts, is first committed after the inception date of the policy.

**V. EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS** are amended to include the following exclusions:

T. Bodily Injury and Property Damage

Under Insuring Agreement H, for, arising out of or resulting from, or alleging or involving Bodily Injury or Property Damage.

U. Products manufactured by Others

under Insuring Agreement H, for, arising out of or resulting from the sale, distribution, maintenance and/or repair of products manufactured by others. However, this exclusion shall not apply to products manufactured by others which are components of the Assured's products.

V. Gradual Deterioration

under Insuring Agreement H, in connection with or resulting from gradual deterioration, wear and tear or any inherent defect.

W. Delay in Delivery or Performance

under Insuring Agreement H, for or arising out of or resulting from delay in delivery of products or delay in performance, or failure to deliver or perform at or within an agreed upon period of time. However, this exclusion does not apply if the delay in delivery or performance arises out of or results directly from the Assured's Wrongful Act.

X. Recall

under Insuring Agreement H, for any cost incurred by the Assured arising out of their withdrawal, recall, inspection, repair or replacement of their products or parts and equipment provided by the Assured in connection with the Assured's products;

Y. Government Authority

under Insuring Agreement H, arising out of or in connection with goods or products (including any container, ingredient or part thereof) that have been distributed by the Assured:

(a) before such goods or products have been approved for such distribution; or

(b) after such goods or products have been declared unsafe or banned;

by the appropriate governmental authority having jurisdiction over such distribution.

Z. Licensing Fees and Royalty Payments

under Insuring Agreement H, arising out of or resulting from any actual or alleged obligation to make licensing fee or royalty payments, including but not limited to the amount or timeliness of such payments

**VII DEFINITIONS** is amended to add the following:

GG. "Manufacturer's Services" means:

1. design, development, manufacturing, selling and value-added reselling of products by the Assured and including materials, parts and equipment provided by the Assured in connection with the Assured's products;

2. the Assured's advice, consultancy, design, plan, specification, formula, labeling, packing, instructions for use, warnings or similar but only insofar as provided in connection with or incorporated in any product supplied by or on behalf of the Assured.

3. installation of the Assured's products by the Assured

4. training by the Assured in the use of, support of, servicing of, maintenance of, and repair of the Assured's products for others;

HH. "Wrongful Act" means a negligent act, error or omission arising out of the rendering or failure to render Manufacturer's Services and which results in the failure of any product or part thereof to perform the function for which it was manufactured, designed, sold, supplied, installed, repaired, altered, treated, dispatched, or for which training was provided.

II. Financial Loss" means third party financial loss following acceptance of the Assured's product or a part thereof in accordance with the terms and conditions of an applicable contract or agreement.

## XII. AMENDED PRODUCTS ENDORSEMENT (MANUFACTURING)

It is hereby understood and agreed that Clause **V. EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS** M is deleted in its entirety and replaced with the following:

M. Products Liability

For or arising out of, or resulting from:

a. The design or manufacture of any goods or products which are sold or supplied by the Assured or by others under license from the Assured;

b. Any subsequently replicated products using the same design;

2. The exclusionary language set forth in subsection 1 above *shall not apply* to any claims for, arising out of, or resulting from:

a. The design of any customised system or process. For purposes of definition, "customised system or process" means

i. Products produced pursuant to a common contract with the Insured, for a single project.

ii. The design of building components where multiple components may be produced according to a single design, if such multiple components are produced for a single location under a common contract executed by the Insured and its customer.

b. Solely from the design and testing of any goods or products prior to such goods or products being distributed, licensed, leased, recommended, handled or sold by the Assured.

c. The negligent specification by the Insured of a standard product or component that proves unsuitable for an application or process.

d. The negligent specification of any Technology Products which result in Claims that would otherwise be covered under Insuring Agreement D (if that Insuring Agreement has been purchased).

3. The exclusionary language set forth in subsection 1 above *shall not apply* to the coverage provided under Insuring Agreement H, Manufacturers Errors and Omissions.

It is also hereby understood and agreed that Clause **XIV. OTHER INSURANCE** A. is deleted in its entirety and replaced with the following:

### XIV. OTHER INSURANCE

This Insurance shall apply in excess of:

A. any other valid and collectible insurance available to any Assured, including, but not limited to, any other professional liability insurance, any project specific professional liability and/or contractors pollution liability insurance, any general liability insurance, any products liability or completed operations insurance or any manufacturers' errors or omissions insurance; and

B. any self insured retention or deductible portion thereof

C. unless such other insurance is written only as specific excess insurance over the Limit of Liability of this Certificate.

### XIII. PROFESSIONAL SERVICES ENDORSEMENT

It is hereby understood and agreed that Clause **VII. DEFINITIONS** X. is deleted in its entirety and replaced with the following:

X. Professional Services" means those services performed for others by or on behalf of the Named Assured in the capacity as an architect, engineer, land surveyor, landscape architect, interior designer, construction manager, project manager, forensic consultant, environmental consultant or design, construction or project consultant or planner, reverse engineering, consulting, repair consulting and recommendation of component parts and testing services.

### XIV. ADDITIONAL ASSURED ENDORSEMENT

It is hereby understood and agreed that the following entity:

John Sabaka

added as an additional Assured of this Certificate for Claims first made against it during the Certificate Period, but only with respect to liability for Professional Services which are covered by this Certificate and then only to the extent the Named Assured would have been liable and coverage would have been afforded under the terms and conditions of this Certificate had such Claim been made against the Named Assured.

The above mentioned extension of coverage shall not apply to any Claim which includes allegations or facts indicating actual or alleged independent or direct liability on the part of any such entity detailed above.

It is a condition precedent to liability under the above mentioned extension of coverage that such entity detailed above shall prove to Underwriters' satisfaction the extent of any Claim arising out of the Named Assured's conduct as described above

ALL OTHER TERMS AND CONDITIONS OF THIS CERTIFICATE REMAIN UNCHANGED